### J. K. FREEMAN v. THE STATE.

No. 7612.   Decided May 30, 1923.

Rehearing denied October 24, 1923.

**1.—Murder—Newly Discovered Evidence.**

Where it did not reasonably appear to the trial judge that the alleged newly discovered evidence would likely produce a different result upon another trial, there was no error in overruling the motion for a new trial.

**2.—Same—Misconduct of Jury—Reference to Penalty of Other Trial.**

Where the alleged misconduct· of the jury consisted of a reference to the penalty given appellant upon a former trial of his case, and the motion for a new trial was controverted by the State, and overruled by the court, and it not appearing that the jury received any new testimony, or that their verdict was in any wise affected by the statement of a certain juror in the jury room, there is no reversible error.

**3.—Same—Rehearing.**

Where there was ample evidence before the trial court to authorize a finding that the reference to the former punishment was not made until

after eleven jurors had voted for ten years, and then the other juror who had first voted for five years and made the reference acquiesced, there was no reversible error.

Appeal from the District Court of Hopkins. Tried below before the Honorable Morris Harrell, Special Judge.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

Dial, Melson, Davidson & Brim, and J. A. Dial, for appellant.
On question of misconduct of jury, Morawitz v. State, 91 S. W. Rep., 227; Horne v. State, 97 id., 822.

R. G. Storey, Assistant Attorney General, for the State. Cited, Wood v. State, 86 Texas Crim. Rep., 55.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Hopkins County of murder, and his punishment fixed at ten years confinement in the penitentiary. This is the second appeal of this case. See 91 Texas Crim. Rep. 410, 239 S. W. Rep., 969.

Appellant was the step-father of deceased and lived on the latter's farm in a house about two hundred yards distant from that occupied by deceased and his family. According to the testimony the space between the two houses was covered by a field of corn and a cotton patch, the latter being next to appellant's house. On the morning of the homicide deceased and his son were plowing in a field of cotton at a point just east of the above mentioned patch of corn and as they approached the west end of the cotton rows and deceased was in the act of turning his mule he was shot by some one from a point in the corn. To a number of witnesses who reached him within a short time after the shooting, deceased made the statement that he was shot by appellant. The son of deceased testified that his father was shot by appellant from a point in said corn. A party who searched for tracks testified that in the corn he found tracks and also in the cotton patch between the corn and appellant's house, which tracks in size and some pecularities named by him were identical with tracks made by appellant's shoes. This witness further said that when he arrested the appellant on the morning of the homicide his shot gun gave every evidence of having been recently fired.

There are but two bills of exception in the record, one of which complains of the refusal of a new trial on the ground of newly discovered evidence. Said newly discovered evidence consisted of the testimony of a witness who would swear that on the morning of the homicide he was on a road which passed by the houses of ap-

pellant and deceased and that about nine o'clock on said morning he saw appellant going across a field toward the home of Oscar Jones· at a point about two hundred or two hundred and fifty yards from the house of said Jones, and that about that time he heard the report of a shot gun some where back north of him. He did not learn of the death of deceased until he reached a point about a mile and one-half distant. Unless it reasonably appear to the trial judge that the newly discovered evidence would likely produce a different result upon another trial, we would have to hold the overruling of the motion not erroneous. Looking to the facts in evidence in this case we observe in the testimony of appellant that he said he was sitting on the gallery at the residence of Mr. Jones when he first heard about the shooting, that he had been sitting on the door step about half an hour before that, that Mr. Jones' little twelve year old boy came to the house and told them about it. The house of Mr. Jones appears to be about five hundred yards south of that occupied by appellant and about the same distance northwest of the house occupied by Mrs. and Miss Middleton who testified in the case that about eight o'clock that morning they heard a shot fired and presently saw appellant running across the pasture in front of their house from the direction of the house of Mr. Jones and in the direction of the house of one of appellant's sons. Reverting to the testimony of appellant's wife, she said that he took his gun and left their house just a minute or two before she heard the shot fired which apparently took the life of Mr. Grayson, the deceased.

The testimony of the witness as evidenced by his affidavit shows that he has no sort of knowledge as to whether the shot which he heard fired was the one that killed the deceased. At most he says he heard a gun fire somewhere north of him. This might cover a very extended territory. We would hardly feel that the trial judge abused his discretion in declining to grant a new trial upon an affidavit of such indefinite character in view of the overwhelming testimony seemingly connecting appellant with the shooting. He and deceased had had serious misunderstanding and a number of threats were in testimony made by appellant against deceased, one of which was that he would kill him if it was the last thing he did.

The other bill of exceptions complains of the court's refusal to grant a new trial upon the ground of misconduct of the jury. The alleged misconduct consisted of a reference to the penalty given appellant upon a former trial of this case. The motion for new trial was controverted by the State and upon its presentation testimony was heard for and against the same. Juror White, whose affidavit had been appended to appellant's motion for new trial as showing misconduct of the jury, testified substantially that after

the jury had retired to consider their verdict and had unanimously agreed upon a verdict of guilty, that they took a vote upon the penalty and the other eleven jurors voted to give a punishment of ten years. Mr. White voted for a punishment of five years. After the vote was taken he voluntarily mentioned himself the fact that upon his other trial appellant had been given ten years. When he mentioned this fact, according to his testimony, one of the other jurors asked him if he did not think appellant should be given a punishment of ten years and he said that he did, if it were not for the fact that he was so old. Upon another ballot Mr. White voted to give appellant ten years. We do not think this such misconduct of the jury as to call for the granting of a new trial. Mr. White testified that he knew of the fact that appellant had received a ten year punishment upon his former trial, before he mentioned such fact in the jury room. This makes it manifest that his own statement of such fact contributed no new testimony to the knowledge of the remainder of the jury till after they had already voted for ten years. He, notwithstanding he knew of the former punishment, voted at first for five years. Upon the next ballot he voted for ten years. It is not shown that anyone argued that because appellant had received ten years at the former trial that he should now be given the same punishment. It not appearing that the jury received any new testimony or that their verdict was in anywise affected by the knowledge of Mr. White or by his statement in the jury room, we conclude the action of the trial judge in overruling the motion for new trial on this ground to be proper.

Finding no error in the record, an affirmance will be ordered.

*Affirmed.*

ON REHEARING.

October 24, 1923.

HAWKINS, JUDGE.—The motion for rehearing questions the soundness of our original opinion in holding a reference by one of the jurors to the number of years assessed against accused by a former jury not such misconduct as called for a reversal.

We concede that if the court had passed upon the motion for new trial with only the affidavits of jurors White and Pogue as attached to the motion before him the law as announced in previous opinions of our court would have demanded the granting of a new trial. But the testimony of White taken upon a hearing of the motion (which is sufficiently set out in our original opinion) modifies his affidavit and asserts that no reference was made by him to the former punishment until after an agreement as to guilt had been

reached, and after a vote had been taken on the punishment, when eleven voted for ten years and he only had voted for five years. It is true juror Pogue testified as follows:

"In the jury room there was something mentioned about the punishment assessed at a former trial. I do not know whether that was before or after I voted on the punishment once, and that vote stood eleven for ten years and one for five years, but I think it was just before."

If the record was before us with only the affidavits and testimony of jurors White and Pogue it would present a condition where one juror had sworn the reference to the former punishment came after the vote on that issue, and another juror that in his best judgment it happened before the vote was taken. But the evidence of the juror Clayton must not be overlooked. He testified:

"I heard some man make a remark to another in the jury room about the punishment assessed at the former trial; that was after we had voted once and the jury at that time stood eleven to one, eleven being in favor of ten years and one was in favor of five. We had agreed at that time that he was guilty. Mr. White is the man that stood out for five years.

Thus we have ample evidence before the trial court to authorize a finding that the reference to the former punishment was not made until after eleven jurors had voted for ten years, and then by White the only one who had voted for five years. So far as the record shows White was the only juror who had previous knowledge of the former verdict carrying ten years punishment and with such knowledge he alone voted at first for five years. No juror argued that White should change his vote from five to ten years because a former jury had fixed such term.

In this condition of the record we believe the learned trial court was not in error in refusing a new trial, and that our opinion announced a proper disposition of the case.

The motion for rehearing is overruled.

*Overruled.*